IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.

JASON THOMPSON,

    Plaintiff

v.

WESTERN GOVERNORS UNIVERSITY

    Defendant

## COMPLAINT

Plaintiff Jason Thompson, by and through his attorney, Samantha L. Pryor, Esq. of The Halliburton Law Firm, LLC, alleges and avers as follows:

### PARTIES

1. Plaintiff Jason Thompson ("Mr. Thompson") is an individual who, at all times relevant hereto, was a resident of Parker, Colorado.

2. Defendant Western Governors University ("WGU") is a foreign nonprofit institution of online higher education with its principal office located at 4001 S. 700 E., Suite 700, Salt Lake City, UT 84107, conducting business in Colorado and other states.

### JURISDICTION AND VENUE

3. Mr. Thompson brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* (employment discrimination, harassment, and retaliation) and the Colorado Anti-Discrimination Act, C.R.S § 24-34-402, *et seq.*

4. Mr. Thompson exhausted his administrative remedies by filing Charges of Discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission (the "EEOC").

5. The EEOC issued a Notice of Right to Sue letter on April 30, 2025.

6. This Court has subject matter jurisdiction over his matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity jurisdiction).

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over the parties because WGU conducted business in the District of Colorado at all times relevant to this action, and Mr. Thompson resided in and worked for WGU's business in the District of Colorado at all times relevant to this action.

9. Venue is proper in the District Court for the District of Colorado pursuant to 28 U.S.C. § 1391 because the unlawful practices alleged herein occurred within the District of Colorado.

## JURY DEMAND

10. Mr. Thompson requests a trial by jury for all counts and issues so triable.

## NATURE OF THE CASE

11. This case is about systemic race discrimination, harassment, and retaliation against Mr. Thompson, a Black male, who was employed as Vice President ("VP") for WGU's Diversity, Equity, and Inclusion ("DEI") department.

# FACTUAL ALLEGATIONS

### A. Background and Employment

12. WGU hired Mr. Thompson as VP of its DEI department in April 2020.

13. Mr. Thompson is a thought leader in DEI with expertise in data collection and analysis relating to DEI efforts. Mr. Thompson authored "Diversity and Inclusion Matters," highlighting his data-centric approach to DEI work.

14. On or about June 16, 2022, the Denver Business Journal honored Mr. Thompson with the Legacy Award for DEI during the Denver Business Journal's DEI Award Reception.

15. Mr. Thompson has over 25 years of experience in DEI, with 10 of those years at the VP level. He also has experience managing a $50 million budget at a company with 10,000 employees.

16. Throughout his employment at WGU, Mr. Thompson performed his job duties in a satisfactory manner with no previous complaints or documented performance deficiencies.

17. Mr. Thompson earned a starting salary of approximately $260,000, and at the time of the unlawful termination of his employment, he earned $302,580.

### B. Discriminatory Pay Practices

18. WGU claims its pay philosophy is to start highly qualified employees at the midpoint of the pay range.

19. Despite Mr. Thompson's extensive qualifications and experience, WGU did not pay Mr. Thompson a salary near the midpoint until after he was employed at WGU for almost four years.

20. After 3 years and 6 months of employment, Mr. Thompson was just reaching the midpoint of his salary range, which was inconsistent with WGU's stated philosophy of paying "well qualified individuals" at the midpoint of the range.

## C. Discriminatory Treatment of Mr. Thompson and His Direct Reports

21. In or around September 2022, WGU hired Ms. Javonda Quinn and Ms. Arionne Allen as Directors of WGU's DEI program, both of whom are Black women who worked under Mr. Thompson's supervision.

22. Ms. Quinn's offer letter clearly stated she was hired as DEI Director for Western Governors University with a base salary of $165,000 and bonus eligibility of $15,000.

23. The job descriptions for these director positions outlined various tasks and responsibilities dealing with managing, training, and coaching people, including, but not limited to, providing guidance, coaching, and training to other employees. The director positions also provide direction to project team members, including feedback on performance.

24. After hiring Ms. Quinn and Ms. Allen as directors, WGU later changed and misclassified their titles as "individual contributor directors" and refused to pay them according to their director roles.

25. WGU also refused to allow Mr. Thompson's Black directors to perform tasks and attend meetings in the director role like the directors who worked under non-Black VPs at WGU.

26. Mr. Thompson was the only VP who did not have "directors" on his team who could attend director meetings, while every other non-Black VP was staffed with directors who regularly attended director meetings, provided input on policy, and made meaningful impact.

27. Curiously, shortly after Ms. Quinn and Ms. Allen were hired, WGU sent them rejection letters, indicating they were not hired, though these letters were erroneous.

28. When Mr. Thompson raised concerns about WGU's pattern and practice of not allowing Ms. Quinn and Ms. Allen to attend director meetings, WGU claimed it was because they were not "people leaders", which is contrary to their offer letters and job descriptions.

29. It is disturbing that WGU would advertise, interview, make offers, and onboard the employees under the pretense that they were directors and then try to demote them once they were hired. Mr. Thompson requested that WGU simply do the right thing and formalize their positions as directors. WGU refused to do so.

30. WGU also refused to appropriately pay two other minority women employees who were Senior Leads on Mr. Thompson's DEI team at WGU, Elizabeth Aranda and Francesca Delgado. Mr. Thompson also raised concerns about the inequity in pay for Ms. Aranda and Ms. Delgado, and WGU refused to take appropriate corrective action, despite clear disparities and conflicts with WGU's pay practices versus its policies and procedures.

### D. Pattern of Discrimination Against Black Employees

31. There is a disturbing pattern of racial bias in performance evaluations at WGU, with Black employees consistently rated lower than their White peers.

32. In or around the time Mr. Thompson was employed at WGU, low performance ratings for employees of color increased among Black/African America (by approximately 4.5%) over time, while low performance ratings for White employees decreased (by approximately 3.1%).

33. In addition, diverse and Black employees voluntarily resign or are terminated from WGU at much higher rates than White employees.

34. In fact, after WGU's unlawful termination of Mr. Thompson, a number of Black employees were terminated, whether voluntarily or involuntarily.

### E. Mr. Thompson's Complaints of Discrimination

35. On October 19, 2023, Mr. Thompson raised concerns with WGU management about being treated differently because of his race. Mr. Thompson also complained about inequitable compensation and his directors being improperly excluded from meetings.

36. On October 30, 2023, Mr. Thompson explicitly stated he was experiencing discrimination based on his race and requested a formal investigation.

37. On November 27, 2023, Mr. Thompson again complained to WGU that he was experiencing discrimination based on his race and that he found it unethical for his supervisor to investigate herself and conveniently find no discrimination.

38. Mr. Thompson had previously complained (on or about June 3, 2022) about being excluded from DEI stakeholder groups and executive sponsors, and he explicitly stated that such exclusionary tactics created a hostile work environment for him based on his protected class.

39. WGU's responses to Mr. Thompson's complaints were consistently dismissive and failed to address the core issues he raised.

### F. Retaliation Following Complaints and Protected Activities

40. Mr. Thompson filed his initial EEOC Charge of Discrimination on February 9, 2024, and he continued raising concerns about discrimination towards him and his staff based on their membership in protected classes.

41. After Mr. Thompson began raising concerns and filing complaints of discrimination, WGU retaliated against him by, *inter alia*, engaging in the following adverse actions:

   a. Refusing to provide him with information critical to his role;

   b. Excluding him from/no longer inviting him to meetings that he previously attended;

   c. Denying him the opportunity to share information about his team during meetings he could attend, while similarly situated White colleagues were allowed to share similar information about their teams;

   d. Adding a challenging new goal to Mr. Thompson's responsibilities during his April 2, 2024 performance review related to creating an Affirmative Action Plan ("AAP"), which was unusual, as goals are typically set at the beginning of the year and appeared to be a platform to set up Mr. Thompson for failure and future adverse employment actions;

   e. Blaming Mr. Thompson for not completing the AAP even though it was human resources that did not complete its portions of the AAP;

   f. Excluding him from a meeting on May 10, 2024, regarding LGBTQAI+ / DEI Laws, despite the subject matter's direct relevance to his role;

   g. Criticizing Mr. Thompson for not informing his team about decisions made during the May 10, 2024 meeting, although WGU intentionally excluded Mr. Thompson from that meeting;

   h. Delaying his performance review; and

      i.    Engaging in other adverse actions.

42. On May 20, 2024, Mr. Thompson raised a new concern of retaliation and hostile work environment to WGU's attorney, Sarah Hook, via email. He raised concerns about being excluded from information relating to the AAP project and decisions being made without his involvement, particularly regarding the hiring of a new person for the AAP project.

43. After raising the May 20, 2024 concern, WGU swiftly ramped up its retaliation against Mr. Thompson.

44. On June 10, 2024, WGU sent an email to Mr. Thompson, mischaracterizing his work, suggesting he was a campaigner and a polarizing leader who leads with criticism, and otherwise making unfair criticisms about Mr. Thompson.

## G. Retaliatory Termination

45. On June 26, 2024, WGU unlawfully terminated Mr. Thompson's employment in retaliation for him engaging in protected activities under the law.

46. The termination occurred shortly after Mr. Thompson filed his EEOC charge and continued raising concerns about discrimination and harassment.

47. WGU also mistakenly sent a termination message to one of Mr. Thompson's team members, indicating the hasty and retaliatory nature of the termination.

**FIRST CLAIM FOR RELIEF**
Race Discrimination
(Title VII, 42 U.S.C. § 2000e-2)

48. Mr. Thompson incorporates by reference the allegations in paragraphs 1 through 47 as if fully set forth herein.

49. At all times relevant hereto, WGU employed fifteen or more employees and was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

50. Mr. Thompson is a Black male.

51. Mr. Thompson's job performance met or exceeded expectations associated with his job duties.

52. WGU discriminated against Mr. Thompson based on his race by subjecting him to different terms and conditions of employment, including, but not limited to, unequal pay, exclusion from meetings, and disparate treatment compared to similarly situated White and non-Black employees. WGU engaged in adverse acts and omissions against Mr. Thompson because of his race as described hereinabove.

53. WGU's adverse acts and omissions occurred under circumstances that give rise to an inference of discrimination under Title VII.

54. WGU's actions constitute unlawful employment discrimination in violation of Title VII.

55. As a direct and proximate cause of WGU's unlawful employment practices, Mr. Thompson has sustained damages, including, but not limited to, back pay, front pay, compensatory damages, attorney's fees, costs, pre- and post-judgment interest, liquidated damages, and other damages to be determined at trial.

## SECOND CLAIM FOR RELIEF
Harassment – Hostile Work Environment
(Title VII, 42 U.S.C. §2000e-2 et seq.)

56. Mr. Thompson incorporates by reference the allegations in paragraphs 1 through 55 above as if fully set forth herein.

57. Throughout the course of his employment at WGU, Mr. Thompson was subjected to unwelcomed offensive behaviors and practices based on his race (Black), including, but not limited to, regularly excluding him and his Black direct reports from important meetings relevant to their roles, refusing to take prompt and remedial action to correct or abate discriminatory/offensive employment practices, gaslighting Mr. Thompson about his concerns about discrimination, and other unlawful behaviors.

58. The harassment was pervasive, as it occurred on a regular daily basis, and the practices significantly interfered with Mr. Thompson's ability to perform his duties.

59. In addition to receiving Mr. Thompson's complaints of discrimination and harassment, WGU had constructive notice of the harassing practices towards Mr. Thompson and his direct reports because the unlawful practices were being carried out by and through WGU's upper management, executives, and human resources department.

60. Despite having constructive and actual knowledge of the harassing behavior towards Mr. Thompson, WGU failed to take any prompt or remedial action to correct or abate the unlawful behavior.

61. WGU's failure to correct or abate the harassing practices only exacerbated and tacitly approved the unlawful conduct and created a hostile work environment for Mr. Thompson in violation of Title VII.

62. Because of the hostile work environment WGU created for Mr. Thompson, Mr. Thompson sustained damages, including, but not limited to, back pay, front pay, compensatory damages, attorney's fees, costs, pre- and post-judgment interest, liquidated damages, and other damages to be proven at trial.

### THIRD CLAIM FOR RELIEF
Retaliation in Violation of Title VII

63. Mr. Thompson incorporates the allegations in paragraphs 1 through 62 above as if fully set forth herein.

64. Mr. Thompson engaged in various protected activities, including, but not limited to, opposing discriminatory practices and filing discrimination complaints with WGU's Human Resources Department and the EEOC.

65. WGU took adverse employment actions against Mr. Thompson, including, but not limited to, excluding him and his direct reports from important meetings, denying him opportunities to participate in relevant work-related discussions, adding unreasonable and untimely goals to Mr. Thompson's performance plan, and terminating his employment.

66. WGU's adverse actions were taken because of Mr. Thompson's protected activities and constitute unlawful retaliation in violation of Title VII.

67. As a direct and proximate cause of WGU's unlawful employment practices, Mr. Thompson has sustained damages, including, but not limited to, back pay, front pay, compensatory damages, attorney's fees, costs, liquidated damages, pre- and post-judgment interest, and other damages to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### Discrimination
### (Colorado Anti-Discrimination Act, C.R.S. 24-34-402, et. seq.)

68. Mr. Thompson incorporates by reference the allegations in paragraphs 1 through 67 above as if fully set forth herein.

69. Mr. Thompson is a Black male.

70. Mr. Thompson adequately performed his job duties while employed at WGU.

71. WGU, by and through its executives, employees, and/or agents, discriminated against Mr. Thompson with respect to the terms, conditions, and privileges of employment by treating him differently than similarly situated individuals and taking adverse actions against him because of his race as described hereinabove.

72. The adverse actions occurred under circumstances that give rise to an inference of discrimination under the Colorado Anti-Discrimination Act.

73. As a direct and proximate cause of WGU's unlawful employment practices, Mr. Thompson has sustained damages, including, but not limited to, back pay, front pay, compensatory damages, attorney's fees, costs, pre- and post-judgment interest, and other damages to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### Harassment
### (Colorado Anti-Discrimination Act, C.R.S. § 24-34-402, et seq.)

74. Mr. Thompson incorporates by reference the allegations in paragraphs 1 through 73 above as if fully set forth herein.

75. Mr. Thompson is a Black male.

76. Throughout his employment at WGU, Mr. Thompson was repeatedly subjected to unwelcome and offensive behaviors based on his race.

77. WGU's executives, Human Resources professionals and other agents did not engage in the same harassing behavior with any of Mr. Thompson' White counterparts.

78. Submission to the harassing behavior was explicitly and implicitly made a term and condition of Mr. Thompson' employment.

79. Mr. Thompson's submission and objection to the harassing behaviors were used as bases for WGU's employment decisions affecting Mr. Thompson.

80. The unlawful behavior towards Mr. Thompson occurred on a regular basis and had the purpose and/or effect of unreasonably interfering with Mr. Thompson' work performance and created a hostile and offensive work environment.

81. WGU had actual and constructive notice of the harassing behavior towards Mr. Thompson.

82. Despite having constructive and actual knowledge of the harassing behavior towards Mr. Thompson, WGU failed to take any prompt or remedial action to correct or abate the unlawful behavior.

83. WGU's failure to take action to correct or abate the harassing behavior only tacitly approved the unlawful conduct and exacerbated a hostile work environment for Mr. Thompson.

84. Because of the hostile work environment WGU created for Mr. Thompson, Mr. Thompson sustained damages, including, but not limited to, back pay, front pay, compensatory damages, attorney's fees, pre- and post-judgment interest, liquidated damages, costs, and other damages to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### Retaliation
**(Colorado Anti-Discrimination Act, C.R.S. § 24-34-402, et seq.)**

85. Mr. Thompson incorporates by reference the allegations in paragraphs 1 through 84 above as if fully set forth herein.

86. Mr. Thompson engaged in various activities that are protected under federal and Colorado law, including, but not limited to, raising multiple formal and informal internal and external complaints about differential treatment and harassment based on his race (Black) and his subordinates' race and other activities described herein.

87. WGU retaliated against Mr. Thompson for engaging in those legally protected activities by taking various adverse actions against Mr. Thompson, including, but not limited to, terminating his employment and other retaliatory actions referenced hereinabove.

88. As a direct and proximate cause of WGU's unlawful employment practices, Mr. Thompson has sustained damages, including, but not limited to, back pay, front pay, compensatory damages, attorney's fees, costs, pre- and post-judgment interest, liquidated damages, and other damages to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Thompson respectfully requests the following relief:

a. Back pay;

b. Front pay;

c. Compensatory damages;

d. Equitable relief;

e. Attorney's fees;

  f. Costs;

  g. Pre- and post-judgment interest

  h. Liquidated damages;

  i. Any and all other relief available under applicable law

Dated:  July 28, 2025

            Respectfully Submitted,

            **ATTORNEY FOR PLAINTIFF**

            */s/Samantha L. Pryor*
            Samantha L. Pryor, Esq. #39194
            THE HALLIBURTON LAW FIRM, LLC
            1800 Glenarm Place, Unit 101
            Denver, CO 80202
            303-803-1060
            spryor@thehalliburtonlawfirm.com